A07A0306. FERRARI et al. v. AMERICAN HOME PRODUCTS
CORPORATION et al.
(650 SE2d 585)

SMITH, Presiding Judge.

In this case involving an issue of first impression, we are called upon to address whether the National Childhood Vaccine Injury Compensation Act of 1986 ("Vaccine Act"), 42 USC § 300aa-1 et seq., preempts a lawsuit for injuries allegedly caused by the routine vaccination of a child.[1] The trial court concluded that a portion of the plaintiffs' claims are preempted by the Vaccine Act and granted partial summary judgment in favor of the defendants. For the reasons set forth below, we reverse.

Summary judgment is proper when no genuine issue of material fact appears and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review the grant or denial of a motion for summary judgment de novo, construing the evidence and all reasonable inferences in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). So viewed, the record shows that Marcelo and Carolyn Ferrari, individually and on behalf of their minor son, Stefan Ferrari, sued nine children's vaccine manufacturers ("vaccine defendants"),[2] eight thimerosal manufacturers,[3] and one rhogam manufacturer[4] for alleged neurological damage to their son caused by vaccines containing thimerosal preservative, which in turn contained mercury. According to the Ferraris, their son's neurological damage was caused by the mercury, which is toxic to humans. The Ferraris also sued Georgia Power, claiming that mercury emissions from its power plants also injured their son. The Ferraris asserted claims under Georgia law for strict liability and negligence. The Ferraris alleged the vaccine defendants negligently researched, manufactured, tested or failed to test, warned or failed to warn, and failed to recall thimerosal-containing vaccines. According to the Ferraris, the vaccine defendants could and should have manufactured children's vaccines without thimerosal before their son was vaccinated in 1998.

SmithKline Beecham Corporation, GlaxoSmithKline Biologicals, S.A., and Wyeth filed answers denying liability and moved for

---

[1] This appeal does not address the causation element of the plaintiffs' claims.

[2] Sanofi Pasteur, Inc., Aventis Pharmaceuticals, Inc., SmithKline Beecham Corporation, GlaxoSmithKline, GlaxoSmithKline Biologicals, S.A., GlaxoSmithKline Belgium, Wyeth, Lederle, Inc., and Lederle Pharmaceutical.

[3] Eli Lilly and Company, Inc., Sigma-Aldrich, Inc., Sigma-Aldrich Corporation, Spectrum Laboratory Products, Inc., Meridian Chemical and Equipment, Inc., American International Chemical, Inc., Dolder, Ltd., and Uriach Corporation.

[4] Ortho-Clinical Diagnostics.

summary judgment in their favor, claiming that the Vaccine Act preempted the Ferraris' claims. The trial court found that the preemption doctrine applied and granted partial summary judgment to the vaccine defendants on the Ferraris' design defect claims, their failure-to-warn claims to the extent that they alleged a failure to warn the plaintiffs or the general public, and their breach of warranty claims to the extent they asserted that the vaccines were defectively designed. On appeal, the Ferraris assert that the trial court erred by: (1) finding that its design defect claims are preempted; and (2) refusing to consider constitutional arguments raised by the Ferraris after the court had orally announced its ruling in favor of the vaccine defendants.

## The Vaccine Act

In 1986, Congress enacted the Vaccine Act "to prevent manufacturers from leaving vaccine production or significantly increasing their prices, while at the same time compensat[ing] victims of vaccine-related injuries quickly." *Sykes v. Glaxo-SmithKline*, 2007 U. S. Dist. LEXIS 22998, *18 (V) (B) (1) (E.D. Pa. 2007). The Vaccine Act creates a no-fault compensation system for victims of certain vaccine-related injuries and requires injured parties to file a petition in the vaccine court. Id. at *18-19; see also 42 USC §§ 300aa-11 (a) (2) (A), 300aa-13 (a) (1) (A)-(B). If the injured party is not satisfied with the outcome of the vaccine court process, he or she may pursue a traditional tort action, subject to certain restrictions imposed by the Vaccine Act. *Sykes*, supra, 2007 U. S. Dist. LEXIS 22998 at *20; see also 42 USC § 300aa-21 (a) (1)-(2). These restrictions modify state law as follows:

(a) General rule. Except as provided in subsections (b), (c), and (e) State law shall apply to a civil action brought for damages for a vaccine-related injury or death.

(b) Unavoidable adverse side effects; warnings.

(1) *No vaccine manufacturer shall be liable in a civil action* for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after the effective date of this part [effective Oct. 1, 1988] *if the injury or death resulted from side effects that were unavoidable even though the vaccine was properly prepared and was accompanied by proper directions and warnings.*

(2) For purposes of paragraph (1), a vaccine shall be presumed to be accompanied by proper directions and warnings if the vaccine manufacturer shows that it complied in all material respects with all requirements under the Federal Food, Drug, and Cosmetic Act [21 USCS §§ 301 et seq.] and section 351 of the Public Health Service Act [42 USCS § 262] (including regulations issued under such provisions) applicable to the vaccine and related to vaccine-related injury or death for which the civil action was brought unless the plaintiff shows —

(A) that the manufacturer engaged in the conduct set forth in subparagraph (A) or (B) of section 2123 (d) (2) [42 USCS § 300aa-23 (d) (2) (A) or (B)], or

(B) by clear and convincing evidence that the manufacturer failed to exercise due care notwithstanding its compliance with such Act and section (and regulations issued under such provisions).

(c) Direct warnings. No vaccine manufacturer shall be liable in a civil action for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after the effective date of this part [effective Oct. 1, 1988] solely due to the manufacturer's failure to provide direct warnings to the injured party (or the injured party's legal representative) of the potential dangers resulting from the administration of the vaccine manufactured by the manufacturer.

(d) Construction. The standards of responsibility prescribed by this section are not to be construed as authorizing a person who brought a civil action for damages against a vaccine manufacturer for a vaccine-related injury or death in which damages were denied or which was dismissed with prejudice to bring a new civil action against such manufacturer for such injury or death.

(e) *Preemption. No State may establish or enforce a law which prohibits an individual from bringing a civil action against a vaccine manufacturer for damages for a vaccine-related injury or death if such civil action is not barred by this subtitle [42 USCS §§ 300aa-10 et seq.].*

(Emphasis supplied.) 42 USC § 300aa-22. The Vaccine Act also limits the recovery of punitive damages to cases in which

> the manufacturer engaged in . . . (A) fraud or intentional and wrongful withholding of information from the [FDA] during any phase of a proceeding for approval of [a] vaccine . . . , (B) intentional and wrongful withholding of information relating to the safety or efficacy of the vaccine after its approval, or (C) other criminal or illegal activity relating to the safety and effectiveness of vaccines, which activity related to the vaccine-related injury or death for which the civil action was brought.

42 USC § 300aa-23 (d) (2).

These restrictions expressly "convey Congress's intent to supersede, or preempt, state tort law standards and create legal protections that apply in any civil action brought against a vaccine manufacturer." *Sykes*, supra, 2007 U. S. Dist. LEXIS 22998 at *20 (V) (B) (1). As in *Sykes*, the vaccine defendants argue that the Vaccine Act bars the Ferraris' design defect claims because "any vaccine-related injury would be deemed 'unavoidable' if the vaccine was properly prepared and accompanied by proper warnings." Id. at *24 (V) (B) (2). The vaccine defendants essentially equate FDA approval with a determination that side effects are "unavoidable." See id.

The Ferraris, on the other hand, assert that design defect claims are barred only if the side effects are determined on a case-by-case basis to be "unavoidable." They argue that their child's injuries could have been avoided if the defendants had used a mercury-free preservative for multi-dose vials of their vaccines or if they had simply manufactured single-dose vials that did not require a preservative.

Judicial Interpretation of Scope of Vaccine Act Preemption

Only a handful of courts have addressed the scope of the preemption clause found in 42 USC § 300aa-22, and each has concluded, after examining the legislative history of the Vaccine Act, that the issue of whether side effects are "unavoidable" cannot be litigated in civil actions. See *Sykes*, supra, 2007 U. S. Dist. LEXIS 22998 at *33; *Blackmon v. American Home Products Corp.*, 328 FSupp.2d 659, 664 (S.D. Tex. 2004); *Militrano v. Lederle Laboratories*, 3 Misc.3d 523 (769 NYS2d 839) (2003), aff'd, 26 AD3d 475 (810 NYS2d 506) (2006). Each of these cases, however, was either decided before or fails to address

the Supreme Court's landmark opinion[5] in *Bates v. Dow Agro-Sciences*, 544 U. S. 431 (125 SC 1788, 161 LE2d 687) (2005), on traditional preemption analysis. The Ferraris assert that application of the reasoning in *Bates*, supra, mandates a different outcome. We agree.

## Bates

In *Bates*, the Supreme Court "overturn[ed] thirteen years of precedent during which pesticide companies enjoyed relative immunity from tort liability." Joseph Frueh, Pesticides, Preemption, and the Return of Tort Protection, 23 Yale J. on Reg. 299, 300 (Summer 2006). Before *Bates*, courts interpreted the following language from the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA")[6] to bar tort claims: "State[s] shall not impose or continue in effect any requirement for labeling or packaging in addition to or different from those required under [FIFRA]." 7 USC § 136v (b). *Bates*, supra, 544 U. S. at 436, nn. 4, 5. According to this view, judgments in civil actions might compel pesticide companies to change their labels and would therefore violate the prohibition contained in § 136v (b). See id. at 443.

The Supreme Court rejected this approach, and adopted a "parallel requirements reading" of the phrase "in addition to or different from" in FIFRA to allow civil suits based upon common law standards of conduct that served FIFRA's primary purpose of preventing false or misleading statements or inadequate instructions or warnings. *Bates*, supra, 544 U. S. at 447-448. In so holding, the Supreme Court noted:

> Conspicuously absent from the submissions by Dow and the United States is any plausible alternative interpretation of "in addition to or different from" that would give that phrase meaning. . . . Even if Dow had offered us a plausible alternative reading of § 136v (b) — indeed, even if its alternative were just as plausible as our reading of that text — *we would*

---

[5] See Joseph Frueh, Pesticides, Preemption, and the Return of Tort Protection, 23 Yale J. on Reg. 299, 309 (V) (Summer 2006) ("*Bates* urges that courts must stay the hand of preemption unless given a nearly explicit mandate by the enabling statute."); Kim Ly, *Bates v. Dow AgroSciences*: Overcoming Federal Preemption and Giving the People a Voice, 26 J. Nat. Assn. Admin. L. Judges 297, 336 (VI) (Spring 2006) ("the *Bates* Court has signaled a shift away and against federal preemption of common law tort [claims]"); Christene Beaupre, Case Comment: Product Safety—Food and Drug Laws: How Bates Changed the Face of Preemption, 82 N. Dak. L. Rev. 579, 601 (IV) (A) (2006) ("The *Bates* decision may reverse . . . the trend to uphold preemption claims and bar state law claims.") (citation and footnote omitted).

[6] 7 USC § 136 et seq.

> *nevertheless have a duty to accept the reading that disfavors pre-emption.* "Because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action." [Cit.] "In areas of traditional state regulation, we assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest." [Cits.]

(Punctuation omitted; emphasis supplied.) Id. at 448-449 (III). The emphasized language above drastically changes traditional preemption analysis.

Before *Bates*, application of a presumption against preemption to questions concerning the *scope* of an express preemption clause was controversial. See, e.g., *Medtronic, Inc. v. Lohr*, 518 U. S. 470, 485 (116 SC 2240, 135 LE2d 700) (1996); *Cipollone v. Liggett Group*, 505 U. S. 504, 545-546 (112 SC 2608, 120 LE2d 407) (1992) (Scalia, J., concurring in the judgment in part and dissenting in part). Furthermore, the presumption against preemption was rebuttable,[7] and courts examined legislative history to determine Congress's intent with regard to ambiguous language in express preemption clauses.[8]

The pivotal language in *Bates* changed traditional preemption analysis in two ways: (1) There is no longer a rebuttable *presumption* against preemption, but a *duty to accept* the reading of an express preemption statute that disfavors preemption; and (2) preemption analysis ends with an examination of the statutory language alone. Under this approach, it appears that legislative history should no longer be examined to discern Congressional intent when an express preemption clause has two plausible alternative readings.

Since *Bates*, one court has adopted these changes into its preemption analysis. See *Blue Flame Energy Corp. v. Ohio Dept. of Commerce &c.*, 2006 Ohio App. LEXIS 6809, *27 (December 26, 2006) ("[I]f the express pre-emption provision is ambiguous, a court has a duty to accept the reading that disfavors pre-emption, particularly in areas of traditional state regulation.") (citations omitted). While adopting these changes, however, the Ohio Court of Appeals did not apply them, because it concluded that the express preemption clause before it was unambiguous. Id. at *32-33. Therefore, if we conclude

---

[7] See, e.g., *Patrick Fur Farm v. United Vaccines*, 286 Wis.2d 774, 780, n. 2 (703 NW2d 707) (Wis. App. 2005).

[8] See, e.g., *Sykes*, supra, 2007 U. S. Dist. LEXIS 22998 at *26.

that the Vaccine Act's preemption clause is subject to two alternative readings, this court may be the first to apply the changes created by *Bates*.

## Application of *Bates* to the Vaccine Act

The statutory language at issue provides: "No vaccine manufacturer shall be liable in a civil action . . . if the injury or death resulted from side effects that were unavoidable even though the vaccine was properly prepared and was accompanied by proper directions and warnings." 42 USC § 300aa-22 (b) (1). Two of the courts addressing this language have concluded that two alternative, plausible readings exist with regard to preemption of the issue of unavoidable side effects, and we agree with their conclusion. *Sykes*, supra, 2007 U. S. Dist. LEXIS 22998 at *26; *Militrano*, supra, 769 NYS2d at 843-844. One reading is that vaccine injuries are "unavoidable" and subject to preemption if the vaccine was properly prepared and accompanied by proper directions and warnings. The other reading is that design defect claims are preempted only if the side effects are determined to be unavoidable on a case-by-case basis.

We also agree with our fellow courts' conclusion that when the contemporaneous legislative history of the Vaccine Act is examined, Congress's intent to preempt this issue becomes clear.[9] *Sykes*, supra, U. S. Dist. LEXIS 22998 at *35; *Militrano*, supra, 769 NYS2d at 843-844. A passage in the Report of the Committee on Energy and Commerce states:

> Given the existence of the compensation system in the Vaccine Act, . . . [v]accine-injured persons will now have an appealing alternative to the tort system. Accordingly, if they cannot demonstrate under applicable law either that a vaccine was improperly prepared or that it was accompanied by improper directions or inadequate warnings they should pursue recompense in the compensation system, not the tort system.

(Punctuation omitted.) *Sykes*, supra, 2007 U. S. Dist. LEXIS 22998 at *29-30. See also *Militrano*, supra, 810 NYS2d at 508; *Blackmon*, supra, 328 FSupp.2d at 664-665.

---

[9] The Ferraris point to subsequent legislative history accompanying an amendment to fund the Vaccine Act as evidence of a contrary intent. However, "subsequent legislative history is a hazardous basis for inferring the intent of an earlier Congress." (Citation and punctuation omitted.) *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U. S. 633, 650 (III) (B) (110 SC 2668, 110 LE2d 579) (1990).

1. Because two alternative readings of the Vaccine Act exist, application of the Supreme Court's pronouncement in *Bates*, supra, is outcome determinative.[10] Under *Bates*, we "have a duty to accept the reading [of the Vaccine Act] that disfavors pre-emption," and we cannot resort to an examination of legislative history to discern Congress's intent. 544 U. S. at 449 (III). Because two plausible, alternative readings of the Vaccine Act exist, we must conclude that the trial court erred by finding that the Ferraris' design defect claims are preempted.

While this result differs from that reached by other courts addressing the preemptive effect of the Vaccine Act, none of those courts addressed the impact of *Bates* on the analysis of ambiguous express preemption clauses. We recognize that this result is anomalous given the clear legislative history to the contrary, but we are constrained to follow the Supreme Court's explicit guidance in *Bates*. While the vaccine defendants urge us to limit the Supreme Court's pronouncement in *Bates* to the facts of the case before it, there is no rational basis for us to do so. The language at issue is very broad and addresses preemption analysis generally.

2. Our holding in Division 1 renders moot the Ferraris' remaining enumeration of error regarding the trial court's refusal to consider their constitutional claims.

*Judgment reversed. Barnes, C. J., and Miller, J., concur.*

DECIDED JULY 5, 2007 — ▆▆▆▆▆▆▆▆▆

*Moraitakis, Kushel, Pearson & Gardner, Albert M. Pearson III, Lanny B. Bridgers,* for appellants.

*Fields, Howell, Athans & McLaughlin, Paul L. Fields, Jr., Alissa C. Malone, Greenberg Traurig, Lori G. Cohen, Christiana C. Jacxsens, Alembik, Fine & Callner, Lowell S. Fine, Leslie J. Suson, Lightmas & Delk, Glenn A. Delk, King & Spalding, Robert D. Hays, Jr., Michael R. Powers, Matthew S. Harman, Nall & Miller, George R. Neuhauser, Kenneth P. McDuffie, Hawkins & Parnell, William H. Major III, David H. Wilson,* for appellees.

---

[10] The vaccine defendants assert that *Bates* should be limited to its facts and apply only in cases involving the same or similar preemption statutes. We find no merit in the argument. The language used by the Supreme Court in *Bates* is very broad and applies to the analysis of any express preemption statute.